**FILED**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AUG 3 - 2006

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Cr. No. 89-0322-01 (TFH)** |
| | ) | |
| WAYNE BYFIELD, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendant Wayne Byfield's Motion for Modification of

Sentence Pursuant to 18 U.S.C. § 3582(c)(2). Upon careful consideration of the submissions of

Defendant and the Government, the evidence presented at the hearing in this case that was held

on May 10, 2006, and the entire record herein, the Court will deny Defendant's motion.

### I.   BACKGROUND

On October 2, 1992, Defendant was convicted for unlawful possession with intent to

distribute fifty grams or more of a mixture or substance containing cocaine base in violation of

21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). The Honorable Joyce Hens Green sentenced

Defendant on December 18, 1992, to 292 months in prison. Defendant appealed his conviction,

and the Court of Appeals affirmed it on July 23, 1993. United States v. Byfield, 1 F.3d 45, 1993

WL 299109 (D.C. Cir. July 23, 1993) (unpublished table decision).

On December 6, 2002, Defendant filed the instant motion for modification of his sentence

pursuant to 18 U.S.C. § 3582(c)(2). That provision permits a court to "reduce the term of

imprisonment" of a properly filing defendant whose "term . . . [was] based on a sentencing range

that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. §

994(o) . . . " 18 U.S.C. § 3582(c)(2).  In his motion, Defendant invoked Amendment 484 to

U.S.S.G. § 2D1.1, which is included in the list of amendments that qualify a defendant for §

3582(c)(2) relief.  See U.S.S.G. § 1B1.10(c).  Amendment 484 states that, for sentencing

purposes, a drug mixture or substance under § 2D1.1 "does not include materials that must be

separated from the controlled substance before the controlled substance can be used." U.S.S.G.

App. C, Amdt. 484; § 2D1.1 comment. (n.1) (effective Nov. 1, 1993).

Defendant was convicted for possessing a mixture of cocaine base (commonly known as

crack) and mannitol (sugar) that weighed 607.8 grams.  Applying the pre-Amendment § 2D1.1 to

that weight, the sentencing court sentenced Defendant to the minimum within the Level 38

sentencing range (292 to 365 months).  The mixture, however, was comprised of about 340

grams (56%) cocaine base and about 267 grams (44%) mannitol.  In his motion, Defendant

claimed that a person cannot smoke a mixture of roughly equal parts sugar and cocaine, thus the

sugar must be separated from the cocaine base before it can be used.  If so, Defendant would

qualify for a reduced sentence at the Level 36 guidelines range (235 to 93 months).

On July 18, 2003, the Court denied Defendant's motion and his accompanying request for

a hearing.  The Court found that "[s]ugar is simply a cutting agent, which the Supreme Court has

already held may be properly included in the weight of drugs as measured for sentencing

purposes," citing Chapman v. United States, 500 U.S. 453, 458-59 (1991).  Defendant appealed

the Court's denial of his motion for modification.  On December 10, 2004, the United States

Court of Appeals for the District of Columbia Circuit found that the Court had abused its

2

discretion in denying Defendant an evidentiary hearing on the motion.[1] The D.C. Circuit

reversed and remanded for the purpose of allowing the parties to present evidence regarding

whether Defendant is entitled to a reduced sentence under Amendment 484 to U.S.S.G. § 2D1.1.

On May 10, 2006, the Court held an evidentiary hearing on Defendant's motion for

modification of sentence. At that hearing, Defendant presented four witnesses. Defendant

himself testified that he prepared the contraband for which he was arrested. He stated that he

mixed cocaine hydrochloride (powder, not crack cocaine), "zoom" or "comeback," and water,

until the ingredients formed a paste. He then froze the paste in a freezer, before removing it to be

sold. Defendant testified that he often sold this frozen preparation as crack rock, but that in the

frozen paste form, the cocaine would not be usable. The user would need to take an additional

step to "recook" the mixture to convert it from hydrochloride to crack cocaine before it could be

smoked. One recooks cocaine by adding baking soda and water, heating the substance, and then

pouring off the water.

The second defense witness was Robert Dortch, a twenty-year user of crack cocaine. Mr.

Dortch testified that cocaine in the form of a paste would not be smokable. He stated that in

order to use such a paste, he would try to recook it.

The third defense witness was Timothy Watkins, who testified that he knew Defendant

personally, and that in the past Defendant had provided him with cocaine on consignment. Mr.

Watkins testified that the drugs Defendant provided him often melted in the bag, and would need

to be recooked or re-frozen before it could be sold. Mr. Watkins also testified that there were

---

[1] U.S.S.G. § 6A1.3 requires a sentencing court to conduct an evidentiary hearing on any issue relevant to sentencing that is "reasonably in dispute." The D.C. Circuit found that Defendant had put the usability issue in dispute within the meaning of that provision.

times he received crack cocaine from Defendant in a finished, smokable form. Mr. Watkins had

no knowledge of the form of the cocaine base with which Defendant was charged in this case.

The final defense witness was Gregory Tate, who was called as an expert familiar with

the use of crack cocaine, and methods used to convert cocaine hydrochloride into cocaine base.

He testified that mixing cocaine hydrochloride with "comeback" would not render a smokable

form of cocaine base. In order to make the mixture smokable, one would need to take the

additional steps of adding water and bicarbonate or baking soda, heating the mixture up again,

and then pouring off the water and allowing the cocaine to dry. The result would be in a rock-

like form.

The Government called one witness, John Casale, a senior forensic chemist at the Drug

Enforcement Administration Special Testing Facility. Mr. Casale testified as an expert in the

area of forensic chemistry specializing in the analysis of cocaine and methamphetamines. Mr.

Casale, who has personal experience in manufacturing cocaine base for law enforcement

purposes, described the process by which cocaine base is made. Mr. Casale described a process

in which cocaine hydrochloride is dissolved in water, a base such as baking soda or baking

powder is added, and the solution is heated. After the solution cools, the cocaine base hardens

into a rock-like substance. The water is then poured off, and the crack cocaine remains.

Mr. Casale also testified that a substance made up of forty-four percent mannitol and

fifty-six percent cocaine base, would be smokable. Mr. Casale described an experiment he

performed in order to duplicate the process of smoking such a mixture. He made a fifty percent

ratio mixture of cocaine base and mannitol by melting one gram of cocaine base and one gram of

mannitol into an oil. After the mixture cooled and hardened, he chipped off some rocks of the

4

appearance and consistency he had observed in exhibits of cocaine base that he has analyzed. He placed a small rock, typical of the size a user would smoke, in a device he fashioned to duplicate a pipe that a crack smoker would use. Mr. Casale placed the pipe into a laboratory glass that would trap the vapors. When the mixture was heated, the vapors trapped in the laboratory glass were analyzed and approximately ninety percent of the cocaine was recovered. The mannitol did not vaporize, but rather burned, producing black smoke and charring. The black smoke (mannitol), "went one way," while the white smoke (cocaine base) went into the testing medium.

The Government also introduced into evidence a copy of the DEA-7 report of drug analysis, dated September 8, 1989, that was stipulated to at Defendant's second trial. The report states that the substance seized from Defendant was identified as cocaine base in a strength of fifty-six percent. In addition, the parties stipulated that at Defendant's first trial, a DEA forensic chemist testified that mannitol was present in forty-four percent of the mixture. The parties also stipulated that the cocaine base was in a rock-like form at the time it was introduced at the defendant's first trial and that "several years later" it had degraded "into a sort of leaking substance."

On June 15, 2006, Defendant filed a supplementary Memorandum in Aid of Sentencing Relief. On June 20, 2006, the Government filed an opposition to Defendant's memorandum.

## II.   ANALYSIS

At issue here is whether, in determining Defendant's proper sentencing range under the Sentencing Guidelines, the portion of the drugs for which Defendant was sentenced that consisted of mannitol should be included in the total weight of the "mixture or substance" for offense level purposes. Pursuant to Amendment 484, if the mannitol must be separated from the

5

controlled substance before the controlled substance could be used, the mannitol should *not* be included in the total weight for which Defendant is held accountable at sentencing. See U.S.S.G. § 2D1.1, comment. (n.1).

At the evidentiary hearing, the testimony of the defense witnesses and the Government's expert was overwhelmingly consistent. All witnesses agreed with regard to the process taken to convert cocaine hydrochloride into cocaine base (also known as crack cocaine). The only dispute that arose from the testimony is whether the particular drugs at issue here began as a mixture of cocaine hydrochoride (as Defendant testified), or cocaine base (as the DEA analysis found).

At trial, a jury found beyond a reasonable doubt that Defendant possessed with intent to distribute cocaine base. Defendant stipulated at trial to the DEA analysis that determined the substance to be fifty-six percent cocaine base. Further, at the evidentiary hearing, Mr. Casale stated unequivocally that a forensic chemist, like the one who analyzed the drugs at issue here, could distinguish between cocaine base and cocaine hydrochloride. This testimony was not rebutted. Finally, a finding that the drugs at issue were a mixture of cocaine base, rather than the mixture Defendant described, is consistent with the fact that the drugs were still in a rock-like form (not a melted paste) at the time of Defendant's first trial – a fact to which Defendant has stipulated. Accordingly, the Court finds that the substance at issue here was a mixture of mannitol and cocaine base, not cocaine hyrdrochloride.

At the evidentiary hearing, the Government's expert chemist demonstrated that even when mixed with an equal quantity of mannitol, cocaine base can be smoked. This testimony was not rebutted by Defendant. The expert's testimony, however, was that when such a mixture is smoked, only the cocaine base is ingested. The mannitol burns away. The remaining issue for

6

the Court, therefore, is whether the mannitol should be excluded from the total weight of the drugs for sentencing purposes because the mannitol is not ingested along with the cocaine base.

Section 2D1.1 of the Guidelines, as amended, states that "[m]ixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used." U.S.S.G. § 2D1.1, comment. (n.1). Defendant argues that "usable" in this context is equated with "consumable" or "ingestible," citing United States v. Stewart, 361 F.3d 373, 381-82 (7th Cir. 2004). Defendant contends that because the mannitol burned away in the chemist's experiment, it is not consumed or ingested by the user, and therefore should not be included in the total weight of the drugs.

In Stewart, at issue was whether 825 grams of a solution generated during a thwarted attempt to produce methamphetamine should have been included in the drug quantity for sentencing purposes. 361 F.3d at 373. The solution that was seized in that case contained methamphetamine that had not been fully processed – the defendant would have needed to take additional steps to convert the solution into a usable or consumable form before distributing it. Id. at 375. Therefore, the court held that only the amount of pure methamphetamine contained in the unusable solution (or the amount of usable drug that is likely to be produced after that unusable solution is fully processed) may be included in the drug quantity. Id. at 382.

In Stewart, the controlling factor was that the drugs at issue were not in a fully processed form. Id. Here, unlike in Stewart and contrary to Defendant's claims, the Court has found that the drugs were a fully processed mixture of cocaine base. While the court in Stewart did use the terms "usable" and "consumable" interchangibly, see id., here the *mixture* itself was both usable and consumable. The Government showed that the mannitol that was mixed with the cocaine

base was merely a cutting agent, was not toxic, and did not render the drugs uningestible or

unmarketable. As the Government's expert demonstrated, the mixture was usable, as it could be

smoked without first removing the mannitol cutting agent. Accordingly, the weight of the

mannitol is properly included in the drug quantity for sentencing purposes. See United States v.

Berroa-Medrano, 303 F.3d 277, 283-84 (3d Cir. 2002).

Further, as the court in Stewart noted, in drafting the Controlled Substances Act,[2]

Congress' concern was with mixtures that eventually will reach the streets, thus cutting agents

and dilutants should be factored into drug weight calculations. See id. at 379 (citing Chapman,

500 U.S. at 463). In Chapman, the Supreme Court recognized that the Controlled Substances

Act and the Sentencing Guidelines increase the penalty for persons who possess large quantities

of drugs, regardless of their purity, and held that such a sentencing scheme is rational. Chapman,

500 U.S. at 465. "Congress clearly intended the dilutant, cutting agent, or carrier medium to be

included in the weight of those drugs for sentencing purposes." Id. at 460.

Finally, Defendant argues that the Court should re-sentence him under the rule of lenity.

The rule of lenity, however, does not apply here. The rule is only applicable where "there is a

'grievous ambiguity or uncertainty in the language and structure'" of a statute. Chapman, 500

U.S. at 463 (quoting Huddleston v. United States, 415 U.S. 814, 831 (1974)). "The rule of lenity

comes into operation at the end of the process of construing what Congress has expressed, not at

the beginning as an overriding consideration of being lenient to wrongdoers." Id. (quoting

Callanan v. United States, 364 U.S. 587, 596 (1961)). Here, the definition of "mixture or

---

[2] Under the Guidelines, "mixture or substance" under § 2D1.1 has the same meaning as in 21 U.S.C. § 841, except as expressly provided. U.S.S.G. § 2D1.1, comment. (n.1).

substance" as provided by Amendment 484 is straightforward: it does not include materials that must be separated from the controlled substance before the controlled substance can be used. U.S.S.G. § 2D1.1, comment. (n.1). The evidence presented by the Government at the hearing clearly demonstrated that the controlled substance at issue here, cocaine base, could be used without first separating from it the mannitol. There is no reason to resort to the rule of lenity here.

Accordingly, in consideration of the evidence that was presented at the hearing on this motion, because Amendment 484 does not affect the manner in which Defendant's sentence was calculated, the Court will deny the motion to reduce his sentence.

### III.    CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(2). An appropriate order will accompany this Memorandum Opinion.

August 2nd, 2006

Thomas F. Hogan
Chief Judge

Copies to:

Jensen E. Barber
Bar No. 376325
400 Seventh Street, N.W.
Suite 400
Washington, D.C. 20004

AUSA Patricia Stewart
United States Attorney's Office
555 Fourth Street, N.W.
Room 3229

Washington, D.C. 20530

Wayne Byfield
DCDC # 241-141
DC Department of Corrections
CTF
1901 E Street, S.E.
Washington, D.C. 20003